IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD KELLY, et al.,

               Plaintiffs,

    v.

MAXUM SPECIALTY INSURANCE
GROUP, et al.,

               Defendant.

CIVIL ACTION
NO. 14-7149

## OPINION

**Slomsky, J.**

**September 29, 2015**

## I.    INTRODUCTION

Before the Court are Plaintiffs Patrice Kelly and Ronald Kelly's Motion to Remand (Doc.

No. 9) and Defendant Maxum Specialty Insurance Group's Motion to Dismiss (Doc. No. 23).

## II.    BACKGROUND

On May 23, 2007, Plaintiffs Patrice and Ronald Kelly were involved in a motor vehicle

accident with another car. (Doc. No. 1-1 at 14.) The driver of the other vehicle had been served

alcohol at the Princeton Tavern in Philadelphia while visibly intoxicated. (Id.) Before the

accident, the Princeton Tavern had purchased through its insurance broker liability insurance

with dram shop coverage from State National Insurance Company. (Id. at 13.) Plaintiffs have

identified as the broker Sergius B. Carman, the Carman Corporation, the Carman Group, Inc.,

and the Carman Group, LLC (collectively, the "Carman Defendants"). (Id.)

Following the accident, Plaintiffs sued the Princeton Tavern in state court to recover

damages for injuries and economic losses in the case Kelly v. BBK Tavern et al., C.C.P., Phila.

1

Cty., May Term; 2009; No. 2424.  (Id. at 14.)[1]  Plaintiff did so by filing a Writ of Summons. John Bell, a representative of the Princeton Tavern, alerted the Carman Defendants to the state court action when he received the Writ of Summons.  (Id.)  Bell and his counsel also requested that the Carman Defendants notify State National Insurance Company of the state court action and of its obligation to defend and indemnify the insureds under the dram shop insurance provision of their insurance policy.  (Id.)  Bell renewed this request during the pendency of the state litigation.  (Id.)

The Carman Defendants failed to timely notify State National Insurance Company of the litigation.  (Doc. No. 1-1 at 15.)  As a result, State National Insurance Company refused to indemnify the Princeton Tavern for any liability resulting from the litigation involving Plaintiffs. (Id.)  The Princeton Tavern eventually settled with Plaintiffs in the amount of $5,000,000.  (Id.) The Princeton Tavern then assigned its right to sue the Carman Defendants to Plaintiffs Patrice and Ronald Kelly.  (Id. at 23-24.)  The assignment reads, in pertinent part, as follows:

> . . . The Princeton Tavern, by and through its authorized representative, John Bell (collectively referred to as "Assignors"), do hereby agree to and do hereby assign to Ronald and Patrice Kelly, the assigned claims which include any and all rights in law and/or equity that they now have or may in the future have, whether now known or hereinafter ascertained, against certain persons and companies including Carmen Corporation, Serge Carmen, and David Lehman, Esquire, their affiliates [sic] agents and employees arising out of or in any manner related to their handling or involvement in the Kelly Litigation and the negligent and improper failure to notify State National Insurance Company of the Kelly Litigation . . . .

(Doc. No. 1-1 at 23-25.)

After receiving the assignment of rights, Plaintiffs filed a lawsuit in July 2013 in the Philadelphia Court of Common Pleas against the Carman Defendants. (Doc. No. 1-1 at 11.)

---

[1] BBK Tavern, Inc. is a Pennsylvania corporation that operates the Princeton Tavern.  The underlying state court litigation refers to the Princeton Tavern defendant as BBK Tavern, Inc., d/b/a The Princeton Tavern.

Plaintiffs alleged negligence and breach of an oral agreement to promptly notify State National Insurance Company of the Princeton Tavern's request for indemnification and defense in the state court case. (Id.)

The Carman Defendants have professional liability insurance through Defendant Maxum Specialty Insurance Group ("Maxum"). (Doc. No. 1-1 at 2, 7.) During discovery in the state court action between Plaintiffs and the Carman Defendants, Plaintiffs filed a motion to extend discovery deadlines to allow Maxum to enter an appearance and defend on behalf of its insureds. (Doc. No. 9-5 at 3.) The Carman Defendants opposed this motion, asserting that Plaintiffs had no standing to bring an action against Maxum and that Maxum had no duty to defend the Carman Defendants. (Doc. No. 9-6 at 5.) This action is still pending in state court.

On December 1, 2014, Plaintiffs filed an action against Maxum and the Carman Defendants, again in state court, seeking a declaratory judgment under 42 Pa. Cons. Stat. § 7531 et seq. Specifically, Plaintiffs seek a declaration that:

1. Defendant, Maxum Specialty Insurance Group, is obligated to defend its insureds, the [Carman Defendants], in the underlying Ronald and Patrice Kelly [sic], as assignees of BBK Tavern, Inc. v. The Carman Corporation, et al. (Phila. CCP; July Term, 2013, No. 04825) litigation;

2. Defendant, Maxum Specialty Insurance Group, is obligated to indemnify its insureds, the [Carman Defendants] in the underlying Ronald and Patrice Kelly [sic], as assignees of BBK Tavern, Inc. v. The Carman Corporation, et al. (Phila. CCP; July Term, 2013, No. 04825) litigation;

3. Defendant, Maxum Specialty Insurance Group, is obligated to reimburse counsel for Plaintiffs, Ronald and Patrice Kelly, for all their attorney's fees and costs they have or will incur in the litigation of this coverage litigation;

4. Grant such other and further relief as may be proper.

(Doc. No. 1-1 at 9.)

On December 16, 2014, Maxum removed the state court declaratory judgment action to this Court based on diversity of citizenship jurisdiction under 28 U.S.C. § 1441. Although the

3

Carman Defendants and Plaintiffs are both citizens of Pennsylvania, Maxum removed the action based on the theory that the parties should be realigned to reflect that Plaintiffs and the Carman Defendants have the same interest in the state court declaratory judgment action. (Doc. No. 1 at 4-5.) The shared interest is in having Maxum defend the Carman Defendants under the insurance policy with dram shop coverage against the action filed by the Kelly's, and in having Maxum indemnify them without any out-of-pocket loss to the Carman Defendants. Accordingly, if this Court were to exercise its authority to realign the parties to change the Carman Defendants to Plaintiffs in the removed declaratory judgment suit, diversity of citizenship jurisdiction would be satisfied because Maxum is a citizen of Georgia and Plaintiffs are citizens of Pennsylvania.

In response to the removal of the state declaratory judgment action to this Court, Plaintiffs filed a Motion to Remand on December 24, 2014. (Doc. No. 9.) The Motion was supplemented on January 26, 2015. (Doc. No. 21.) Maxum filed a Response in Opposition to Remand. (Doc. No. 14.) The Carman Defendants, however, filed a Response in Support of the Motion to Remand. (Doc. No. 22.)

On January 26, 2015, Maxum also filed a Motion to Dismiss the declaratory judgment action. (Doc. No. 23.) Plaintiffs filed a Response in Opposition to the Motion on February 2, 2015 (Doc. No. 31), and on February 10, 2015, Maxum filed a Reply (Doc. No. 33).

On February 11, 2015, the Court held a hearing on both Motions. (Doc. No. 36.) For reasons that follow, the Motion to Remand will be granted.[2]

## III.   ANALYSIS

### A.   Motion to Remand

---

[2] Because the Motion to Remand is being granted, there is no need for the Court to decide the Motion to Dismiss.

Plaintiffs and the Carman Defendants make two arguments in support of remand. First, they aver that the Carman Defendants and Plaintiffs do not have the same interests and therefore the two parties should not be realigned to establish diversity jurisdiction. Second, they argue that under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and its state court counterpart, the Court should exercise its discretion and decline to exercise jurisdiction. Because the Court will decline to exercise jurisdiction over the declaratory judgment action in accordance with the factors set forth by the Third Circuit in <u>Reifer v. Westport Ins. Corp.</u>, this Court need not decide the issue of realignment. <u>See</u> 751 F.3d 129 (3d Cir. 2014).

### 1.    Declaratory Judgment Act

#### a.  Standard of Review

Under the Declaratory Judgment Act (the "DJA"), courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory judgment is an exception to the general rule that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996) (citing <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 821 (1976)). The Supreme Court has long held that the DJA confers "discretionary, rather than compulsory, jurisdiction upon federal courts." <u>Reifer</u>, 751 F.3d at 134 (citing <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 494 (1942)). Accordingly, district courts are authorized "in the sound exercise of [their] discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995). These principles also apply in a case removed to federal court in which a declaratory judgment is sought under the state declaratory judgment act. <u>Reifer</u>, 751 F.3d at 134 n.4 (the question of

5

whether to exercise federal jurisdiction to resolve a controversy with a declaratory judgment is a procedural issue to be determined under federal law, even if the action was brought under a state declaratory judgment statute).

In determining whether to exercise jurisdiction over a declaratory judgment action, the Supreme Court in Brillhart and Wilton, and the Third Circuit in Reifer, have articulated certain factors that a court should consider. First, a court must determine whether there is a parallel state court proceeding, meaning "a matter pending in state court in which all the matters in controversy between the parties could be fully adjudicated." Brillhart, 316 U.S. at 494-95. A finding that such parallel proceedings in state court exist "militates significantly in favor of declining jurisdiction." Reifer, 751 F.3d at 144-45.

Next, a district court must weigh the following eight factors:

1)   the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
2)   the convenience of the parties;
3)   the public interest in settlement of the uncertainty of obligation;
4)   the availability and relative convenience of other remedies;
5)   a general policy of restraint when the same issues are pending in state court;
6)   avoidance of duplicative litigation;
7)   prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
8)   in the insurance context, an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Reifer, 751 F.3d at 146 (3d Cir. 2014). The Court must balance these factors against the presumption of jurisdiction or lack of jurisdiction established in part one of the test. Id. Accordingly, the Court will first determine whether a parallel state court proceeding exists, and thereafter will weigh the remaining Reifer factors.

**b.  There Is a Parallel State Court Proceeding**

6

The Court first must determine if there is a pending state court action in which the matters in controversy before the federal tribunal could be fully resolved and adjudicated by the state court. Brillhart, 316 U.S. at 494-95.  More recently, the Supreme Court declared that—under the Brillhart analysis—a state court proceeding was parallel to a federal declaratory judgment action because it "involve[d] the same parties and present[ed] opportunity for ventilation of the same state law issues." Wilton, 515 U.S. at 283.  Whether a state court proceeding covers "all the matters in controversy" can be determined by examining "the scope of the pending state court proceeding, . . . the nature of the defenses open there, . . . whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amendable to process in that proceeding, etc." Id.

In accordance with the guidance in Wilton, courts within this District have found parallel state court proceedings to exist in the insurance coverage context when those proceedings could resolve the issues that underlie the claims for declaratory judgment. See e.g., State Nat. Ins. Co. v. Landis, No. 14-607, 2015 WL 291722 (E.D. Pa. Jan. 15, 2015); Scottsdale Ins. Co. v. Broaddus, No. 08-3241, 2009 WL 349697 (E.D. Pa. Feb. 11, 2009).  Even if the insurer is not a named defendant in a pending state court proceeding, the Court may find that a state court tort action relating to the insurer's coverage obligations constitutes a parallel proceeding.  See Landis, 2015 WL 291722 at *8 ("[E]ven where a coverage issue is not yet pending in an underlying litigation, and an insurance carrier is not presently a party there, abstention is appropriate . . .") (quoting Owen v. Hartford Ins. Co., No. 14-924, 2014 WL 2737842 (D.N.J. June 17, 2014)); Broaddus, 2009 WL 349697 at *3.  In these circumstances, the Court "has discretion to decline to exercise jurisdiction over a declaratory judgment action in favor of a

7

parallel state court proceeding." <u>Allstate Property and Cas. Ins. Co. v. Schellberg</u>, No. 13-4609, 2014 WL 1632151, at *2 (E.D. Pa. Apr. 22, 2014) (citing <u>Wilton,</u> 515 U.S. at 277). Furthermore, a federal court "should hesitate to entertain a declaratory judgment action where the action is restricted to issues of state law." <u>Atlantic Mut. Ins. Co. v. Gula</u>, 84 F. App'x 173, 174 (citing <u>State Auto Ins. Co. v. Summy</u>, 2 F.3d 131 (3d Cir. 2003)).

Applying the aforementioned principles, there is a parallel state court action where the claims raised in the instant removed declaratory judgment action could be resolved. As noted, Plaintiffs have a pending suit against the Carman Defendants in state court. The state tort claims against the Carman Defendants directly implicate Maxum's obligations to defend and indemnify the Carman Defendants. This scenario is identical to the situation that confronted the court in <u>Landis</u>. <u>See</u> 2015 WL 291722. In <u>Landis</u>, the underlying state court action for a liquor vendor's negligence was declared a parallel proceeding to its insurer's declaratory judgment action because, "as a matter of logic," the coverage claim will "necessarily arise before the matter is concluded in state court." <u>Id.</u> at *6 (quoting <u>Gula</u>, 84 F. App'x at 175). Similarly, Maxum's obligations to the Carman Defendants—the basis of the declaratory judgment action—are intertwined with the underlying state court claims of negligence by the Carman Defendants. The question of coverage of the Carman Defendants by Maxum will necessarily arise in the state court action before it is completed. Additionally, the current declaratory judgment action is brought solely under state law, requiring an interpretation of state law. <u>See</u> <u>Gula</u>, F. App'x at 174. Thus, under the first prong of the <u>Reifer</u> test, this Court finds that a parallel proceeding exists in state court, creating the presumption that this Court should decline to exercise jurisdiction over the removed state declaratory judgment action.

### c.   The Reifer Factors Weigh in Favor of Declining Jurisdiction

Having concluded that there is a pending parallel state court proceeding, the Court must next determine if the relevant <u>Reifer</u> factors outweigh the presumption that the Court should decline jurisdiction.  The Court finds that they do not.

The first factor is whether a federal court declaration will resolve the uncertainty of obligation which gives rise to the controversy. While a federal court declaration could resolve uncertainty about the obligations giving rise to this action, a state court declaration could do so as well.  The claims here—including the request for declaratory judgment—are made under state law, and a state forum can resolve the issues the same as a federal court.  Thus, this first factor is a neutral one, although federal courts usually prefer that state courts are offered the first opportunity to interpret and apply state law.

The second factor is whether a federal forum conveniences the parties. The Court does not find that removal will do so. This Court is located in the same city in which the state court action is pending.  This factor is also a neutral one.

The third factor considers the public interest in settlement of the uncertainty of obligation. A declaration by a state court on state law would better serve the public interest because a state court is better suited to adjudicate state law claims in the first instance when able to do so.

The fourth factor is whether alternative remedies are available.  Although the remedies in the parallel state court action that Plaintiffs seek are money damages, the source of these funds, according to Plaintiffs, should come from the Carman Defendants' insurance coverage.  To reach that point, a court may be called upon to decide the issue of coverage.  The state court can readily do so. But giving Maxum the benefit of the doubt, a declaratory judgment may be necessary and therefore the factor of availability of alternative remedies appears to be neutral.

9

The fifth factor is whether the federal court should exercise restraint when the same issues are pending before the state court.  As noted, this Court finds that the pending state court action is a parallel proceeding in which the same issues can be addressed. As such, the Court will exercise restraint in deciding the same issues pending before the state court.

The sixth factor, which counsels against duplicative litigation, further supports declining jurisdiction given the Court's finding that parallel proceedings in state court exist.

The seventh factor is whether removal is a method of procedural fencing or a means to provide another forum in a race for res judicata. Giving Defendants latitude on this factor, it appears to be a neutral one.

Finally, as to the eighth factor, there is an inherent conflict of interest between Maxum's duty to defend the Carman Defendants in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.  Again, the state court judge presiding over Plaintiffs' case against the Carmen Defendants is in the best position to determine coverage.

Four of the eight <u>Reifer</u> factors favor a determination that the matter of insurance coverage should be decided by the state court, while the other four factors are neutral.  No factors weigh in Maxum's favor.  As such, the state court is best suited to decide this case.  As the Third Circuit has opined, the "desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." <u>State Auto Ins. Cos. v. Summy</u>, 234 F.3d 131, 136 (3d Cir. 2000).  In sum, the <u>Reifer</u> factors do not outweigh the presumption to decline jurisdiction. Consequently, this action will be remanded to state court.

      **2.**       **Realignment**

Maxum urges this Court to exercise its authority to realign the parties for the purpose of establishing diversity jurisdiction, pursuant to Employers Ins. of Wausau v. Crown Cork & Seal Co., 942 F.2d 862, 864 (3d Cir. 1991).  Because this Court will decline to exercise jurisdiction to render a declaratory judgment and will remand this action to state court, it need not address the issue of realigning the parties.

       **B.**      **Motion to Dismiss**

As noted above, because this Court will decline to exercise jurisdiction over this declaratory judgment action and will grant Plaintiffs' Motion to Remand, it need not address Defendant Maxum's Motion to Dismiss.

**IV.**      **CONCLUSION**

For the foregoing reasons, this Court will exercise its sound and reasoned discretion to decline jurisdiction over this case.  Accordingly, Plaintiffs' Motion to Remand will be granted. An appropriate Order follows.