IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD KELLY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MAXUM SPECIALTY INSURANCE GROUP, et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 14-7149 |

## OPINION

**Slomsky, J.**                                                                                                                      **January 9, 2018**

## I. INTRODUCTION

On December 1, 2014, Plaintiffs Ronald and Patrice Kelly filed a declaratory judgment action against Defendants Sergius B. Carman, the Carman Corporation, the Carman Group, Inc., and the Carman Group, LLC (collectively, "Carman") and Maxum Specialty Insurance Group ("Maxum")[1] in the Court of Common Pleas of Philadelphia County. (Doc. No. 1-1 at 5-10.) In this action, the Kellys sought a ruling that Maxum was required to defend and/or indemnify Carman, under a policy of insurance issued by Maxum, in a state court tort action brought against Carman by the Kellys. On December 16, 2014, Defendant Maxum removed the declaratory judgment action to this Court. (Doc. No. 1.) Subsequently, on December 24, 2014, Plaintiffs filed a Motion to Remand (Doc. No. 9), which this Court granted on September 29, 2015. (Doc. No. 41.)

---

[1] Defendant Maxum disputes whether it in fact issued Carman an insurance policy. Maxum claims that the policy was issued by a different insurance company, Maxum Indemnity Company. (Doc. No. 23 at 8.) For purposes of this Opinion, which insurance company issued the policy of insurance is not material. If necessary, the Court will resolve at a later time which insurance company issued the pertinent policy.

1

On October 28, 2015, Defendant Maxum timely appealed this Court's Remand Order, in which the Court declined to exercise jurisdiction over the declaratory judgment action, to the United States Court of Appeals for the Third Circuit. (Doc. No. 43.) Maxum also requested that the Court of Appeals address a pending Motion to Dismiss and an issue concerning realignment of the parties in order to satisfy the prerequisite for diversity of citizenship jurisdiction in federal court, both of which were not previously addressed by this Court because the case was remanded to state court.[2] (Id.) On August 21, 2017, the Court of Appeals ruled that this Court should not have remanded the declaratory judgment action and sent it back to this Court for further consideration. Kelly v. Maxum, 868 F.3d 274, 289 (3d Cir. 2017). It noted that "[b]efore the case proceeds, however, the District Court must determine whether it possesses jurisdiction to hear the case." Id. (citing Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 93-102 (1998) (holding that courts must first establish whether it has jurisdiction to hear a case before addressing the merits).

For reasons that follow, the Court finds that realignment of the parties is warranted and that Carman will be made a plaintiff in the declaratory judgment action against Defendant Maxum. Based upon the realignment of the parties, diversity of citizenship jurisdiction between the parties is achieved. The requisite amount in controversy is satisfied,[3] and this Court now has

---

[2] On January 26, 2015, Maxum filed a Motion to Dismiss the declaratory judgment action. (Doc. No. 23.) Plaintiffs filed a Response in Opposition to the Motion on February 2, 2015 (Doc. No. 31), and on February 10, 2015, Maxum filed a Reply (Doc. No. 33). Carman did not file a response to the Motion to Dismiss. The Court of Appeals did not address the Motion to Dismiss or the issue of realigning the parties; it only ruled on whether remand was proper. In remanding the case, it instructed this Court "to decide whether it has subject matter jurisdiction over the action." Kelly v. Maxum, 868 F.3d 274, 290 (3d Cir. 2017).

[3] The requisite amount in controversy for diversity of citizenship jurisdiction is undisputed by the parties. According to Defendant Maxum's Notice of Removal, Carman is insured by Maxum under a claims-made and reported Professional Liability Policy, with limits of

subject matter jurisdiction over this case.

## II. BACKGROUND

In a lawsuit filed in state court stemming from a 2007 motor vehicle accident, Plaintiffs Ronald and Patrice Kelly obtained a default judgment against BBK Tavern, Inc., d/b/a The Princeton Tavern. The parties eventually settled for $5 million. Princeton Tavern then assigned to Plaintiffs the right to sue its insurance broker: Sergius B. Carman, the Carman Corporation, the Carman Group, Inc., and the Carman Group, LLC (collectively "Carman"). Plaintiffs sued Carman because it had failed to timely notify Princeton Tavern's insurer, State National Insurance Company, of its obligations to defend and indemnify the insured in the state court tort action under its dram shop liability policy.[4] Because State National did not receive notice, it refused to cover Princeton Tavern's legal liability.

Upon receiving the assignment of rights, the Kelly Plaintiffs filed a lawsuit against Carman in the Philadelphia Court of Common Pleas, which is currently pending. Docket Report, Kelly, et al. v. the Carman Corp., et al., Case ID 130704825, Pa. Ct. Com. Pl. (Aug. 2, 2013) (indicating that state case is scheduled for trial on February 12, 2018); (see also Doc. No. 1-1 at 11.) In that case, Plaintiffs allege negligence and breach of an oral agreement against Carman for failing to promptly notify State National Insurance Company of Princeton Tavern's request for

---

    liability of $2 million per claim and $2 million in aggregate. (Doc. No. 1 at 2.) Moreover, in the original state court action between Plaintiffs and BBK Tavern, Inc., d/b/a The Princeton Tavern, discussed infra, Plaintiffs received a $5 million consent judgment.

[4] "Dram shop liability" arises under the Pennsylvania Dram Shop Act, 47 Pa. Stat. and Cons. Stat. Ann § 4-493 (2017), which imposes liability for negligent service of alcohol by liquor licensees. In 2007, Plaintiff Ronald Kelly was injured in an automobile accident by an intoxicated driver. (Doc. No. 1-1 at 14.) The driver had been served alcohol at the Princeton Tavern while visibly intoxicated. (Id.) Prior to the accident, Princeton Tavern purchased a dram shop liability policy from State National Insurance Company through its insurance broker, Carman. (Id.)

indemnification and defense in the litigation. (Id.) On November 11, 2014, counsel for the Kelly Plaintiffs sent Defendant Maxum Specialty Insurance Group, Carman's professional liability insurer, a copy of the amended complaint in the case.[5] On December 1, 2014, Plaintiffs filed a state court action against both Carman and Maxum. (Doc. No. 1-1 at 2, 7.) In that case, pursuant to 42 Pa. Cons. Stat. § 7531 et seq., Plaintiffs sought a declaratory judgment as follows:

1. Defendant, Maxum Specialty Insurance Group, is obligated to defend its insureds, the [Carman Defendants], in the underlying Ronald and Patrice Kelly [sic], as assignees of BBK Tavern, Inc. v. The Carman Corporation, et al. (Phila. CCP; July Term, 2013, No. 04825) litigation;

2. Defendant, Maxum Specialty Insurance Group, is obligated to indemnify its insureds, the [Carman Defendants] in the underlying Ronald and Patrice Kelly [sic], as assignees of BBK Tavern, Inc. v. The Carman Corporation, et al. (Phila. CCP; July Term, 2013, No. 04825) litigation;

3. Defendant, Maxum Specialty Insurance Group, is obligated to reimburse counsel for Plaintiffs, Ronald and Patrice Kelly, for all their attorney's fees and costs they have or will incur in the litigation of this coverage litigation;

4. Grant such other and further relief as may be proper.

(Doc. No. 1-1 at 9.)

On December 10, 2014, Defendant Maxum sent a representative of Carman a letter denying defense and indemnification coverage in the state tort action filed by the Kellys. The

---

[5] Carman was insured by Defendant Maxum for negligence. A portion of the Insuring Agreement, which was referenced in a December 10, 2014 letter from Maxum to Carman denying liability coverage, states:

> We will pay those sums that an "insured" becomes legally obligated to pay as "damages" because of a "wrongful act" in the rendering of or failure to render "professional services" by any "insured" or by any person for whose "wrongful acts" an "insured" is legally responsible for. We will have the right and duty to defend any "insured" against any suit" seeking those "damages." However, we will have no duty to defend an "insured" against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply."

(Doc. No. 14-1 at 3.)

4

letter informed Carman that its Professional Liability Policy was not triggered because Carman had failed to immediately notify Maxum of any demands, notices, summonses or legal papers during the applicable policy period of August 31, 2013 to August 31, 2014. A pertinent section of the denial reads:

> Here, Maxum received first notice of this claim on 11/11/2014 when we received a copy of the Amended Complaint by fax from plaintiff's counsel on 11/11/2014. Therefore, because this claim was not both made and reported within the applicable Policy Period of 8/31/2014 to 8/31/2015 the Policy does not provide either defense or indemnity for this claim.
>
> It should be noted that at the time that the claim was made against Carman in the first week of 12/2013 Maxum was Carman's errors and omissions carrier under a claims made and reported policy, Policy No. PFP-6016792-03 with a Policy Period of 8/31/2013 to 8/31/2014. Based on Carman's first notice of this claim in 12/2013, notice should have been provided to Maxum during the 8/31/2013 to 8/31/2014 Policy Period. We have no indication that this matter was reported to Maxum during the 8/31/2013 Policy Period and you have confirmed that it was not in fact reported.

(Doc. No. 14-1 at 5.)

On December 16, 2014, Maxum timely removed only the state court declaratory judgment action to this Court based on diversity of citizenship jurisdiction under 28 U.S.C. § 1441. The Kellys and Carman are both citizens of Pennsylvania, while Maxum is a citizen of Georgia. Although the Kellys named both Carman and Maxum as defendants, Maxum argues that the parties should be realigned because the Kellys and Carman possess the same interest in the tort action pending in state court. (Doc. No. 1 at 4.) Specifically, both the Kellys and Carman share an interest in having Maxum defend and/or indemnify Carman under the insurance policy in the state action filed against Carman.

On December 24, 2014, the Kelly Plaintiffs filed a Motion to Remand the instant federal case back to state court. (Doc. No. 9.) Maxum filed a Response in Opposition to Remand. (Doc. No. 14.) Notably, Carman filed a Response in <u>Support</u> of the Motion to Remand. (Doc.

5

No. 22.) On September 29, 2015, this Court granted Plaintiffs' Motion to Remand. (Doc. No. 41.) In granting the Motion, this Court declined to exercise jurisdiction under the Declaratory Judgment Act based on its evaluation of eight factors established by the Third Circuit in Reifer v. Westport Ins. Corp., 751 F.3d 129 (3d Cir. 2014).

A significant, but not dispositive, factor to consider in whether to exercise jurisdiction over a declaratory judgment action is whether a parallel state court proceeding exists. Reifer, 751 F.3d at 144-45. After a court determines whether such a proceeding exists, it will then weigh this finding against the eight other Reifer considerations.[6] This Court ultimately found that a parallel proceeding existed in state court, creating a presumption that the Court should decline to exercise jurisdiction. It also concluded that the other factors did not outweigh the presumption. Therefore, it declined to exercise jurisdiction and remanded the case to state court. The Court did not decide the issue of realignment.

On August 21, 2017, the Court of Appeals reversed this Court's decision to remand the case to state court. It held that the state court proceeding between Plaintiffs and Defendant Carman was not parallel to the declaratory judgment action between Plaintiffs and Defendants Carman and Maxum that had been removed to this Court. It also found that the lack of pending parallel state proceedings was not outweighed by the remaining eight Reifer factors. Therefore, on remand, the Court of Appeals instructed this Court to determine whether it has subject matter jurisdiction to hear this declaratory judgment action based on diversity of citizenship jurisdiction if realignment of the parties is warranted.

For reasons that follow, based on the primary interest of the Kellys and Carman in having Maxum defend and indemnify Carman in the state court proceeding in which Plaintiffs are suing

---

[6] The Reifer factors were discussed extensively in this Court's previous opinion and in the Third Circuit's opinion. As such, the Court need not repeat them here.

Carman, realignment of the parties in the declaratory judgment action is appropriate. Carman will be realigned as a plaintiff in this case and will no longer be a defendant with Maxum. Thus, this Court retains subject matter jurisdiction over the declaratory judgment action because both Plaintiffs are now Pennsylvania citizens and Defendant Maxum is a Georgia citizen.

III. ANALYSIS

A. Realignment of Parties

Maxum urges this Court to exercise its authority to realign the parties for the purpose of establishing diversity of citizenship jurisdiction, pursuant to Employers Insurance of Wausau v. Crown Cork & Seal Co., 942 F.2d 862, 864 (3d Cir. 1991). It asserts that "Kelly sued Maxum to try to establish coverage for Carman" and that "the interests of Kelly and Carman are aligned because both seek a determination that Maxum is obligated to defend and indemnify Carman in Kelly's negligence and breach of duties [state] lawsuit. Clearly, the interests of Kelly and Carman are more than aligned; indeed, they are nearly identical." (Doc. No. 1.)

Federal courts have an obligation to "look beyond the pleadings and arrange the parties according to their sides in the dispute," rather than to merely rely on "the parties' own determination of who are plaintiffs and who defendants." Emp'rs Ins. of Wausau v. Crown Cork & Seal Co., Inc., 942 F.2d 862, 864 (3d Cir. 1991) (citing City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63 (1941)). Courts must align parties based upon their genuine interest to illuminate any actual collision of interests. City of Indianapolis, 314 U.S. at 69. In determining whether realignment of parties is appropriate, the Third Circuit employs the "primary purpose" or "primary issue" test. Emp'rs v. Ins. of Wausau, at 942 F.2d at 864. Under this test, the Court looks to the "primary and controlling matter in dispute" and "plaintiff's principal purpose for filing its suit." Id. (citing Zurn Indus., Inc. v. Acton Constr. Co., 847 F.2d 234, 237 (5th Cir.

7

1988). After identifying the primary issue in controversy in the action, the court must then evaluate whether there is a genuine conflict between the parties regarding that issue. Chancellor Props. v. Houston Cas. Co., No. 09-4514, 2009 U.S. Dist. LEXIS 105725, at *5 (E.D. Pa. Nov. 12, 2009) (citing Emp'rs, 942 F.2d at 864).

The primary purpose of the declaratory judgment action here is to determine whether Maxum has an obligation to defend and indemnify Carman in the state tort action. Both the state case and this declaratory judgment action originate from Plaintiffs Ronald and Patrice Kelly's damages incurred from the 2007 motor vehicle accident. They were assigned the right to sue Carman by Princeton Tavern. Carman was their insurance broker and, as alleged by Princeton Tavern, Carman did not notify their insurance company, State National Insurance Company, of Plaintiffs' suit and recovery against Princeton Tavern. Had the insurance company been notified, it could have defended Princeton Tavern.

Plaintiffs sued Carman for negligence and breach of contract, and learned that Maxum was Carman's professional liability insurer. Plaintiffs then filed this declaratory judgment action to determine Maxum's responsibility for defending and indemnifying Carman in the underlying tort action. The Complaint in the declaratory judgment action states as follows:

> Plaintiffs, Ronald and Patrice Kelly, hereby bring this action seeking declaratory judgment to obtain an adjudication that Defendant, Maxum Speciality Insurance Group, is obligated to provide a defense and indemnification to its insureds, the Carman Corporation, the Carman Group, Inc., Sergius B. Carman and the Carman Group, LLC., under and pursuant to the coverages of policy in full force and effect at all times material hereto in the Ronald and Patrice Kelly, as assignees of BBK Tavern, Inc. v. The Carman Corporation, et. al. (Phila. CCP; July Term, 2013, No. 04825) litigation.

(Doc. 1-1 at 8.) Simply put, the objective of the Kelly Plaintiffs is to be made whole from the accident which took place over a decade ago. By requesting the Court to define Maxum's role in this dispute, Plaintiffs seek assurance that they will be able to collect recovery for the damages

they incurred as a result of Carman failing to notify Princeton Tavern's insurer about the suit Plaintiffs filed against Princeton Tavern. If Maxum is obligated to defend and indemnify Carman for negligence, Plaintiffs may have a source of recovery.

Carman's stance in the declaratory judgment action is the same. During a February 11, 2015 hearing on the Motion to Remand, the Court inquired as to Carman's position on realigning the parties in the declaratory judgment action:

| | |
|---|---|
| The Court: | But aren't you standing in effect in the same shoes at this point as the Kellys? |
| [Counsel for Carman]: | For this case? |
| The Court: | Well in the - - in this case, yes. |
| [Counsel for Carman]: | In this case. In this case we seek the same thing. |
| The Court: | You do seek the same thing. |
| [Counsel for Carman]: | Correct. |

***

| | |
|---|---|
| The Court: | All right. I mean are you a legitimate defendant or should you be on the plaintiff side? That's what it comes down to. |
| [Counsel for Carman]: | That's a good question, Your Honor, and it's one that I haven't really thought about 'till you just asked it. I - - Your Honor, based on the way the caption is read and based on the fact that the plaintiffs are seeking coverage I think I'm on the defendant side, although by [sic] interests are lined with the Kellys, if that makes sense. |
| The Court: | All right. And tell me why you should be on the defendants' side. |
| [Counsel for Carman]: | I think I'm on the defendants' side because the Kellys are seeking insurance - - they get insurance coverage in this case and they have to get it from - - they have standing to sue the Carman defendants, and the Carman defendants would - - and would then make available to them, should, |

> any insurance that would cover them for this loss. So I
> don't think that the Kellys in order to bring Carman in the
> case can somehow file some sort of procedural motion to
> make - - bring us in as a plaintiff.

(Doc. No. 38-5 at 16-17.)

Despite these ambiguous statements made to the Court by counsel for Carman and the fact that Carman has not filed anything of record to establish definitively its position in the declaratory judgment action, Carman repeatedly demanded that Maxum defend and indemnify Carman in the underlying state tort action.[7] It seems reasonable that Carman, the insured party, would want defense and indemnification coverage by its professional liability insurer in the Kelly Plaintiffs' case against them.

Plaintiffs contend, however, that they did not have a shared interest with Carman because Carman did not timely seek indemnity and defense from Maxum. (Doc. No. 39 at 8.) Maxum's December 10, 2014 letter denying defense and indemnity coverage acknowledges the fact that Carman failed to report or otherwise contact its insurer when it received notice of the tort action. The Court has not been provided any explanation why Carman did not timely seek coverage in the underlying action. At the February 11, 2015 hearing, the Court asked counsel for Carman why they failed to notify Maxum[8]:

---

[7] Carman's counsel at the time made demands for, or otherwise requested Maxum's position on, defense and indemnification in the state tort action on the following dates: August 15, 2015; July 27, 2016; July 31, 2016; August 2, 2016; August 31, 2016; and September 28, 2016. (Doc. Nos. 567-2; 56-3; 56-4; 56-5; 56-6; and 56-7.)

[8] On October 4, 2017, then-counsel for Carman, John Evans, Esquire, filed a Motion to Withdraw as Attorney. (Doc. No. 57.) On October 13, 2017, the Court held a hearing on the Motion. (Doc. No. 58.) On October 24, 2017, Brian Richard Elias, Esquire filed a Notice of Appearance on behalf of Defendants Sergius B. Carman, the Carman Corporation, the Carman Group, Inc., and the Carman Group, LLC. (Doc. No. 72.) On October 25, 2017, the Court granted John Evans, Esquire's Motion to Withdraw, relieving him of representing the Carman defendants. (Doc. No. 25.)

| | |
|---|---|
| The Court: | Well before I hear from Ms. Vargas let me speak to [counsel for Carman] a second, because [counsel for Carman] what's a little puzzling here in reviewing all this, at least on the surface without additional evidence, is that Carman has been sued. |
| [Counsel for Carman]: | Correct, your honor. |
| The Court: | And you would think that they would want their insurance company, Maxum, to cover them in the litigation. |
| [Counsel for Carman]: | One would think. |
| The Court: | Huh? |
| [Counsel for Carman]: | One would think, Your Honor. I agree. |
| The Court: | But based upon what [counsel for Plaintiffs] is saying they didn't seek that coverage. |
| [Counsel for Carman]: | [Counsel for Plaintiffs]'s statement as to the facts as far as I am considered [sic] is correct, and I was brought into this case and this case alone after this was all done, and I don't really - - you know, I don't really know an explanation as to why they did not. |

(Doc. No. 38-5 at 14-15.)

Upon consideration of all statements by Carman's counsel at the hearing and its lack of any briefing on the realignment issue and the other facts as set forth above, the Court is not persuaded that Carman should remain as a defendant in the declaratory judgment action. It is obvious that the interest of the Kelly Plaintiffs and Carman are the same because both seek to have Maxum defend and/or indemnify Carman in the state tort action. In this regard, Carman's counsel conceded that Carman "seek[s] the same thing" and that its "interests are lined with the Kellys." (Doc 38-5 at 16-17.) Moreover, the argument by the Kellys' counsel that the interests are not the same because Carman delayed in notifying Maxum that it was sued by the Kellys is unconvincing. Even Carman's lawyer could not advance a strategic reason for the delay in

11

notifying Maxum that would support the argument of Kellys' counsel. Accordingly, the Kelly Plaintiffs and Carman have a joint interest in having Maxum defend and indemnify Carman.

As an insured of Maxum, Carman would expect defense and indemnification from its insurer. Otherwise, Carman would not only have to defend itself in the state tort action, but it would also be required to pay all related costs, including Plaintiffs' recovery and attorney's fees if they prevailed, out of its own pocket. Maxum, on the other hand, has an adverse interest to both the Kelly Plaintiffs and Carman; they deny responsibility for defending and indemnifying Carman in the underlying case. Therefore, there is an actual "collision of interests" between Plaintiffs Kelly and Carman, who are aligned on one side, against Defendant Maxum, which is on the other side.

## IV.  CONCLUSION

For the foregoing reasons, this Court will realign the parties, naming Sergius B. Carman, the Carman Corporation, the Carman Group, Inc., and the Carman Group, LLC as Plaintiffs. An appropriate Order follows.[9]

---

[9] Pending in this case is a Motion to Dismiss, filed by Defendant Maxum. (Doc. No. 23.) The parties will be afforded until January 26, 2018 to file any supplemental briefing on the Motion to Dismiss. The Court thereafter will render a decision on the Motion.